## JANET HANSON *v.* TRANSPORTATION GENERAL, INC., ET AL.
### (AC 16527)

Dupont, C. J., and Spear and Hennessy, Js.

Argued March 18—officially released June 10, 1997

*Lawrence C. Sgrignari*, for the appellant (plaintiff).

*Jason M. Dodge*, for the appellees (defendants).

HENNESSY, J. The plaintiff, Janet Hanson, surviving spouse of Allen Hanson, appeals from a decision of the compensation review board of the workers' compensation commission affirming the trial commissioner's denial of benefits. The sole issue in this appeal is whether the commissioner properly determined that the decedent, Allen Hanson, was not an employee under the Workers' Compensation Act. General Statutes § 31-275 et seq. We affirm the board's decision.

The facts necessary to the resolution of this appeal may be summarized as follows. The named defendant Transportation General, Inc.,[1] doing business as Metro Taxi, operated a fleet of taxicabs through the use of both owner-operator and lease agreements. Drivers could either lease or purchase cabs from the defendant. The decedent, under an owner-operator agreement, drove a Metro Taxi from 1987 until he was murdered while operating a Metro Taxi on April 16, 1990. Under the terms of the defendant's standard owner-operator agreement, the defendant held legal title to the vehicle and the owner-operator maintained a beneficial ownership.[2] Upon the termination of the relationship, which could be done by either party after forty-eight hours notice, legal title would be transferred back to the owner-operator. In return for the weekly payment by the owner-operator of "stand dues"[3] in the approximate amount of $425, plus an additional $100 per week if a second driver was used, the defendant, under a certificate issued to it by the department of transportation,

---

[1] The named defendant's workers' compensation insurance carrier is also a defendant in this action. We refer to Transportation General, Inc., as the defendant in this opinion.

[2] The defendant was required to hold legal title to the vehicle because, in accordance with Connecticut law, all taxicabs are required to be titled in the name of the certificate holder, in this case, the defendant.

[3] "Stand dues" are a combination of leasing, taxes and insurance costs.

allowed the owner-operator the right to operate a taxi-cab. The defendant required the owner-operator to be properly licensed, to use a taxicab meter and radio approved by the department of transportation and to obey its regulations and to adhere to all federal, state and local laws. The owner-operators also were required to maintain insurance in the minimum amount required by law at their own expense and to pay for the use and operation of the vehicle including repairs, maintenance, fines, tickets, towing and all taxes or other assessments imposed by governmental agencies. Under the agreement, the owner-operator could set the hours of operation, hire a driver for the taxicab, use the vehicle for personal use and keep all fares derived from the operation of the vehicle. The defendant did not pay the owner-operator, provide benefits, request income records or collect payroll or social security taxes.

## I

The plaintiff's initial claim is that the review board improperly failed to adopt the relative nature of the work test as an alternative to the right to control test in analyzing the relationship between the decedent and the defendant. The plaintiff contends that the decedent would have been found to be an employee of the defendant and entitled to benefits in accordance with the Workers' Compensation Act had the relative nature of the work test been applied in this case.

Both the relative nature of the work and the right to control tests are used to determine if a person is an employee. See 1B A. Larson, Workmen's Compensation Law (1996) § 43.52. The relative nature of the work test applies when the work being done is an integral part of the regular business of the employer and when the worker, relative to the employer, does not furnish an independent business or professional service.[4] The right

---

[4] The relative nature of the work test "contains these ingredients: the character of the claimant's work or business—how skilled it is, how much

to control test, utilized in this state, has been described as follows: "One is an employee of another when he renders a service for the other and when what he agrees to do, or is directed to do, is subject to the will of the other in the mode and manner in which the service is to be done and in the means to be employed in its accomplishment as well as in the result to be attained. . . . The controlling consideration in the determination whether the relationship of master and servant exists or that of independent contractor exists is: Has the employer the general authority to direct what shall be done and when and how it shall be done—the right of general control of the work?" (Citation omitted.) *Kaliszewski* v. *Weathermaster Alsco Corp.*, 148 Conn. 624, 629, 173 A.2d 497 (1961).

In summary, the relative nature of the work test focuses on the closeness of the relationship between the work being performed and the business of the company, while the right to control test focuses on the general authority that exists and is exercised over the person performing the work. There is no question that the right to control test is the test to be applied in this state: "There is no dispute about the ultimate test. It is the right of general control of the means and methods used by the person whose status is involved." *Ross* v. *Post Publishing Co.*, 129 Conn. 564, 567, 29 A.2d 768 (1943); *DaSilva* v. *Danbury Publishing Co.*, 39 Conn. App. 653, 656, 666 A.2d 440, cert. denied, 235 Conn. 936, 668 A.2d 374 (1995).

The plaintiff now urges this court to adopt the relative nature of the work test as an alternative to the tradi-

---

of a separate calling or enterprise it is, to what extent it may be expected to carry its own accident burden and so on—and its relation to the employer's business, that is, how much it is a regular part of the employer's regular work, whether it is continuous or intermittent, and whether the duration is sufficient to amount to the hiring of continuing services as distinguished from contracting for the completion of a particular job." 1B A. Larson, supra, § 43.52.

tional right to control test. This court, however, cannot overrule our Supreme Court's decision in *Ross* to use the right to control test. The plaintiff's claim, therefore, must fail.

## II

The plaintiff next claims that the review board improperly found that the commissioner's conclusions were consistent with the subordinate facts. The plaintiff argues that the application of the facts found by the commissioner does not support the conclusion that the decedent was an independent contractor pursuant to the right to control test.

The plaintiff points to the following findings in support of her contention: (1) all Metro cabs were painted the same color and bore the Metro name and telephone number as directed by the defendant; (2) the drivers were required to utilize a meter, to obey all laws pertaining to the operation of a taxicab and to report loss of license and all traffic citations to the defendant; (3) the drivers were expected to keep the taxicab clean, help passengers with their luggage and exercise courtesy in dealing with the public; (4) if the driver chose to use a radio and agreed to a service call through the radio dispatcher, he or she would be under the orders and direction of the dispatcher.

The review board upheld the commissioner's conclusion that the decedent was an independent contractor and, therefore, not covered as an employee under the Worker's Compensation Act. The board's decision was based on the findings that the decedent paid $425 per week for the right to drive the taxicab and that the decedent was allowed to keep all his fares and to work as many hours as he chose. The review board also found that the facts that the decedent was not paid a salary, that he could use the vehicle for his own personal use and have his own personal customers and that he had

signed an agreement characterizing himself as an independent contractor supported the commissioner's determination.

"Our courts have long recognized that independent contractors are not within the coverage of the Workers' Compensation Act. . . . The determination of the status of an individual as an independent contractor or employee is often difficult . . . and, in the absence of controlling considerations, is a question of fact. . . . The fundamental distinction between an employee and an independent contractor depends upon the existence or nonexistence of the right to control the means and methods of work." (Citations omitted; internal quotation marks omitted.) *Chute* v. *Mobil Shipping & Transportation Co.*, 32 Conn. App. 16, 19–20, 627 A.2d 956, cert. denied, 227 Conn. 919, 632 A.2d 688 (1993). "The commissioner, as trier of facts, has the power and duty to determine the facts, and the conclusions drawn from those facts as found must stand unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them. . . . Our scope of review of the actions of the review division is similarly limited." (Citations omitted; internal quotation marks omitted.) *DaSilva* v. *Danbury Publishing Co.*, supra, 39 Conn. App. 655.

The board concluded that the facts found by the commissioner supported the determination that the decedent was an independent contractor. Because the conclusions drawn by the commissioner reflect an appropriate application of the law to the subordinate facts, we conclude that the board properly affirmed the decision of the commissioner.

### III

The plaintiff's last claim is that the review board improperly upheld the commissioner's refusal to cor-

rect the findings and award. The plaintiff maintains that the facts that she sought to add to the commissioner's findings are material facts that would have made a difference in the result of this case.

"The finding of the commissioner cannot be changed 'unless the record discloses that the finding includes facts found without evidence or fails to include material facts which are admitted or undisputed.' *Wheat* v. *Red Star Express Lines*, 156 Conn. 245, 248, 240 A.2d 859 (1968). 'It [is] the commissioner's function to find the facts and determine the credibility of witnesses . . . and a fact is not admitted or undisputed merely because it is uncontradicted.' . . . Id., 249. A material fact is one that will affect the outcome of the case. See *Tutsky* v. *YMCA of Greenwich*, 28 Conn. App. 536, 540, 612 A.2d 1222 (1992)." *Tovish* v. *Gerber Electronics*, 32 Conn. App. 595, 599, 630 A.2d 136 (1993), appeal dismissed, 229 Conn. 587, 642 A.2d 721 (1994).

After a review of the requests made in the motion to correct the finding and award, we conclude that even if the findings were corrected as requested, the ultimate conclusion would not change. The review board, therefore, properly refused to order the findings to be corrected.

The decision of the compensation review board is affirmed.

In this opinion the other judges concurred.