[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION FOR SUMMARY JUDGMENT (DOCKET ENTRY NO. 130)
The plaintiff, Michael Lisej, filed a four-count revised complaint against the defendants, Christopher Getchell (Getchell), Barnum Chevron, Inc. (BCI), Julia Medeiros d/b/a Barnum Chevron and Steve Medeiros d/b/a Barnum Chevron. The plaintiff alleges the following facts. On or about April 5, 1996, the plaintiff was operating his motor vehicle on Boston Avenue in Stratford when it was struck by a motor vehicle being operated by Getchell. At the time of the collision, Getchell's motor vehicle and/or the repair license plate was owned by the defendants, and Getchell, as the defendants' employee, was operating the defendants' motor vehicle in the course of his employment. The collision was caused by (1) the negligent operation of the motor vehicle by Getchell; (2) the negligence of the defendants acting through Getchell's negligent operation of the motor vehicle, as well as the defendants' negligent entrustment of the motor vehicle to Getchell, the defendants' negligent hiring of Getchell and the defendants' failure to supervise Getchell's use of the motor vehicle; (3) the reckless operation of the motor vehicle by Getchell; and (4) the defendants' deliberate or reckless action of installing nitrous oxide in the vehicle operated by Getchell, or knowing of the installation of nitrous oxide in the vehicle but still allowing Getchell to operate the vehicle.
Julia Medeiros and BCI (hereinafter "the defendants") filed a CT Page 12835 motion for summary judgment as to counts two, three and four on the grounds that the vehicle which Getchell was operating at the time of the collision was not owned by the defendants, Getchell was not acting in the scope of his employment at the time of the accident, Getchell was an independent contractor rather than an employee of the defendants, and the provisions of General Statutes § 14-60 do not apply to this case. The plaintiff filed an objection to the defendants' motion for summary judgment, and the matter was heard by the court on September 28, 1998.
Practice Book § 384 [now Practice Book (1998 Rev.) § 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. The party seeking summary judgment has the burden of showing the absence of any genuine issue of material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. Hertz Corp. v.Federal Ins. Co., 245 Conn. 374, 380-81, 713 A.2d 820 (1998).
 A. Employment Status of Getchell — Counts Two and Three
The defendants argue that Getchell was an independent contractor and not an employee of the defendants and that the defendants could not therefore be vicariously liable for his acts. The defendants contend that Getchell performed repairs for the defendants' business according to his own standards, the mode and manner of his performance was not subject to review, and his work was not controlled by the defendants.
The plaintiff argues that Julia Medeiros indicated that Getchell was an employee in statements to her insurance company. The plaintiff contends that there was no one on hand to check Getchell's work, and therefore the defendants' position that they did not oversee Getchell's work does not lead to the legal conclusion that he was an independent contractor. In addition, the plaintiff argues that there is a question of fact regarding whether the defendants had the right to terminate Getchell. CT Page 12836
The determination of the status of an individual as an independent contractor or employee is often difficult and, in the absence of controlling considerations, is a question of fact. The fundamental distinction between an employee and an independent contractor depends upon the existence or nonexistence of the right to control the means and methods of work. Hanson v.Transportation General, Inc., 45 Conn. App. 441, 446,696 A.2d 1026 (1997), aff'd, 245 Conn. 613, ___ A.2d ___ (1998).
Julia Medeiros avers that Getchell was an independent contractor hired by Frank Benegoss, who in turn was hired by Julia Medeiros to operate the defendants' business. (Objection To Motion For Summary Judgment, Exhibit A, Affidavit of Julia Medeiros, ¶¶ 8-9).[1] Julia Medeiros further avers that Getchell was not the defendants' employee. (Exhibit A, Affidavit of Julia Medeiros, ¶; 19). In her deposition, Julia Medeiros testified that she did not exercise any control over or supervise Getchell's work, nor did she offer suggestions or instructions as to how Getchell should perform his work, but rather that Getchell was free to handle repair work in the manner that he saw fit. (Objection To Motion For Summary Judgment, Exhibit C, Deposition of Julia Medeiros, p. 38). Getchell testified that Julia Medeiros ran the business on a daily basis. (Objection To Motion For Summary Judgment, Exhibit D, Deposition of Christopher Getchell, pp. 23-24). Getchell also testified that Julia Medeiros supervised his work, but generally no one at the business gave him instructions on how to perform repairs. (Exhibit D, Deposition of Christopher Getchell, pp. 27-28, 32).
An independent contractor is one who, exercising an independent employment, contracts to do a piece of work according to his own methods and without being subject to the control of his employer, except as to the result of his work. The fundamental distinction between an employee and an independent contractor depends upon the existence or nonexistence of theright to control the means and methods of work. Hunte v.Blumenthal, 238 Conn. 146, 154, 680 A.2d 1231 (1996). It is not the actual exercise of the right to control that distinguishes an employee from an independent contractor, but rather the employer's possession of the right to control. Id., 163-64.
Based on these considerations, there is a genuine issue of fact in dispute regarding whether Julia Medeiros had the right to control the manner in which Getchell performed his duties as a mechanic, but that this fact is not material. A material fact has CT Page 12837 been defined adequately and simply as a fact which will make a difference in the result of the case. United Oil Co. v. UrbanDevelopment Commission, 158 Conn. 364, 379, 260 A.2d 596 (1969). Here, whether Getchell was acting as an independent contractor or an employee has no effect on the outcome of this case; even if Getchell was an employee, the defendants as Getchell's employers are not liable as a matter of law because Getchell was not acting within the scope of his employment, as discussed below.
 B. Vicarious Liability: Counts Two and Three
The defendants argue that at the time of the collision, Getchell was not acting in the scope of his employment for the defendants or in furtherance of the defendants' business, since he was road-testing his own vehicle on a day when the defendants' business was closed. The plaintiff argues that Getchell's invocation of his fifth amendment right when asked about what he was doing at the time of the accident means there exists a genuine issue of material fact concerning whether, at the time of the collision, Getchell was acting within the course of his employment.
A servant acts within the scope of employment while engaged in the service of the master. Mullen v. Horton,46 Conn. App. 759, 764, 700 A.2d 1377 (1997). The employer "shall be held responsible for the acts of those whom he employs, done in and about his business, even though such acts are directly in conflict with the orders which he has given him on the subject." (Emphasis omitted.) Belanger v. Village Pub I, Inc.,26 Conn. App. 509, 520, 603 A.2d 1173 (1992), quoting Stulginski v.Cizauskas, 125 Conn. 293, 296, 5 A.2d 10 (1939). Ordinarily, the determination of whether one is acting within the scope of one's employment business is a question of fact. Where, however, it is clear that one is not acting within the scope of employment, the question becomes one of law. Sheridan v. Desmond,45 Conn. App. 686, 695, 697 A.2d 1162 (1997).
Julia Medeiros avers that on the day of the accident, the garage was closed in honor of Good Friday, and that Getchell was not operating his motor vehicle for the benefit of the defendants. (Exhibit A, Affidavit of Julia Medeiros, ¶; 13; Exhibit C, Deposition of Julia Medeiros, p. 40). According to Julia Medeiros, the business was closed that day because no one, including Getchell, wanted to work. (Exhibit C, Deposition of Julia Medeiros, p. 40). It should be noted, however, that CT Page 12838 Getchell does not remember informing Julia Medeiros that he would be unavailable for work on the day of the accident. (Exhibit D, Deposition of Christopher Getchell, pp. 23, 30). At her deposition, Julia Medeiros testified that the automobile Getchell was operating at the time, a 1988 Ford Mustang, was not owned by any of the defendants. (Exhibit C, Deposition of Julia Medeiros, pp. 38-39; Memorandum In Opposition To Motion For Summary Judgment, Exhibit B, Statement of Julia Medeiros, p. 3). The plaintiff has supplied a statement given by Julia Medeiros to her insurance company, in which she states that the work Getchell was doing on the Ford Mustang at the defendants' place of business was not being done for the benefit of the defendants. (Exhibit B, Statement of Julia Medeiros, p. 3). Julia Medeiros also testified that Getchell told her subsequent to the accident that he had been test driving the Ford Mustang, which Getchell had either bought or was considering buying. (Exhibit C, Deposition of Julia Medeiros, pp. 17).
In a statement to the Stratford police, Getchell stated that he left the defendants' business at approximately 11:25 a.m. to test drive the Ford Mustang, which he had just purchased. (Motion For Summary Judgment, Stratford Police Department, Voluntary Statement of Christopher Getchell). Getchell declined to answer questions concerning the alleged April 5, 1996 accident during his own deposition, however, by asserting his fifth amendment right. (Exhibit D, Deposition of Christopher Getchell). Nevertheless, Getchell did testify generally that he owned the Ford Mustang, and that when he was working on his Ford Mustang at the defendants' place of business on April 5, 1996, the defendants did not derive any benefit therefrom. (Exhibit D, Deposition of Christopher Getchell, pp. 12-13). According to Getchell, he did not engage in any company business on April 5, 1996. (Exhibit D, Deposition of Christopher Getchell, p. 30).
It clearly appears that the defendants have submitted evidence showing that at the time of the accident, Getchell was operating his own motor vehicle on a day off, and that the operation of this motor vehicle was not in furtherance of the defendants' business. The plaintiff has failed to submit evidence contradicting this, thereby raising issues of fact. Therefore, the court determines as a matter of law that Getchell was not acting within the scope of his employment at the time of the collision. Accordingly, the court concludes as a matter of law that the defendants are not vicariously liable as the employers of Getchell. However, allegations of vicarious liability arising CT Page 12839 from the employer/employee relationship are alleged in the same count with negligent hiring, negligent supervision, and statutory vicarious liability pursuant to § 14-60. As discussed below, genuine issues of material fact preclude the court from granting the defendants' motion for summary judgment as it pertains to the statutory cause of action in count two, and because the court will not grant a motion for summary judgment as to particular paragraphs of a count, the motion for summary judgment is denied as to count two. See Jewett v. General Dynamics Corp. , Superior Court, judicial district of New London at New London, Docket No. 530943 (May 1, 1997, Booth, J.).
The plaintiff has alleged only vicarious liability in count three. Because the court has concluded that Getchell was not acting within the scope of his employment at the time of the accident, the defendants' motion for summary judgment is granted
as to count three.
 C. Vicarious Liability — General Statutes § 14-60: Count Two
The defendants argue that General Statutes § 14-60 is not applicable here, since Getchell used the defendants' repair plate for purposes other than those specified in the statute. The defendants argue that they loaned the repair plate to Getchell so that he could drive a specified vehicle back and forth from the garage, but that Getchell used the repair plate for more than thirty days and placed the repair plate on an unauthorized vehicle.
The plaintiff argues that there are facts indicating that the defendants knew Getchell was using the repair plates on several vehicles, including the one he was operating when he collided with the plaintiff. The plaintiff also argues that there is no evidence indicating whether the defendants inquired of Getchell as to whether he had insurance applicable to automobiles he used with the repair plates.
Joint liability under General Statutes 14-60[2] is appropriate "`only when [a dealer] violates the mandate of § 14-60 and lends dealer plates to a purchaser who is not insured.'Cook v. Collins Chevrolet, Inc., 199 Conn. 245, 250 n. 3 (1986) (emphasis in original)." Rosa v. Dworkin Chevrolet, Superior Court, judicial district of Waterbury, Docket No. 105100 (July 20, 1992, Cofield, J.). CT Page 12840
Julia Medeiros avers that she authorized Getchell's use of the defendants' repair plate first on a pick-up truck and then on a hatchback automobile. (Exhibit A, Affidavit of Julia Medeiros, ¶; 11). Getchell was originally loaned the repair plate in the fall of 1995 when he informed Julia Medeiros that he had to return his own license plate. (Exhibit B, Statement of Julia Medeiros, p. 2). According to Julia Medeiros, Getchell was not authorized to affix the repair plate to any other vehicle or for any purpose other than to drive to and from the defendants' premises for work purposes. (Exhibit A, Affidavit of Julia Medeiros, ¶; 12). Julia Medeiros specifically avers that Getchell was not authorized to affix the plate to the Ford Mustang. (Exhibit A, Affidavit of Julia Medeiros, ¶; 16; Exhibit C, Deposition of Julia Medeiros, p. 39). Nevertheless, Julia Medeiros also stated that she "never expressly told Christopher Getchell not to use the plate on other vehicles." (Exhibit B, Statement of Julia Medeiros, p. 2; Exhibit C, Deposition of Julia Medeiros, p. 40). Julia Medeiros was not sure whether she saw the repair plate on the Ford Mustang before the accident. (Exhibit C, Deposition of Julia Medeiros, p. 21). It was her intention to permit Getchell to use the repair plate on the vehicle that he was driving to and from work. (Exhibit C, Deposition of Julia Medeiros, pp. 30, 39).
Getchell testified that he received the repair plate from the defendants to drive to and from work a few months before the accident. (Exhibit D, Deposition of Christopher Getchell, p. 7). Getchell claims that there were no restrictions placed on his use of the repair plate. (Exhibit D, Deposition of Christopher Getchell, p. 8). He originally received permission to use the repair plate because his own automobile had failed to pass inspection. (Exhibit D, Deposition of Christopher Getchell, p. 28). Getchell testified that he used the repair plate on a Mercury Capri hatchback. (Exhibit D, Deposition of Christopher Getchell, p. 9). Later, Getchell claims, Julia Medeiros knew he was using the repair plate on the Ford Mustang to bring it home after working on it at the defendants' place of business. (Exhibit D, Deposition of Christopher Getchell, p. 31). Getchell testified that he did not have any insurance on the Ford Mustang, and was not certain if he had insurance on the Mercury Capri. (Exhibit D, Deposition of Christopher Getchell, p. 34).
There are no facts indicating that the defendants knew whether Getchell had insurance on his own automobiles, to which he attached the defendants' repair plate. Furthermore, there is CT Page 12841 contradictory evidence as to whether the defendants authorized or had knowledge that Getchell was using the repair plate on the Ford Mustang. Accordingly, the court concludes that genuine issues of material fact exist concerning whether there was compliance with § 14-60, and therefore, whether the defendants may be held jointly liable for Getchell's alleged negligence pursuant to the statute.[4]
 D. Recklessness: Count Four
The plaintiff alleges that the accident was caused by the recklessness of the defendants in that they improperly installed or caused to be installed or were aware of the installation of nitrous oxide in Getchell's vehicle or that they knew of the existence of nitrous oxide in Getchell's motor vehicle and allowed Getchell to operate the motor vehicle knowing that the vehicle could operate at an excessive rate of speed.
The defendants argue that no one associated with BCI had any part in the installation of the nitrous oxide system in Getchell's automobile. The defendants also argue that there is no evidence that the nitrous oxide system was installed on BCI's premises or that Getchell was responsible for its installation.
In order to be reckless, the actor must recognize that his conduct involves a risk substantially greater in amount than that which is necessary to make his conduct negligent. Recklessness is a state of consciousness with reference to the consequences of one's acts. The state of mind amounting to recklessness may be inferred from conduct. But, in order to infer it, there must be something more than a failure to exercise a reasonable degree of watchfulness to avoid danger to others or take reasonable precautions to avoid injury to them. Mooney v. Wabrek,129 Conn. 302, 308, 27 A.2d 634 (1942). Ayala v. Meehan, Superior Court, judicial district of Windham at Putnam, Docket No. 049450 (January 28, 1998, Lager, J.) (21 CONN. L. RPTR. 291).
Julia Medeiros avers that she did not know the nature of the repair work Getchell was performing on the Ford Mustang the week before the accident. (Exhibit A, Affidavit of Julia Medeiros, ¶; 15). Julia Medeiros specifically testified that she did not know that the Ford Mustang had a nitrous oxide injector or that it had the capacity to run on nitrous oxide. (Exhibit C, Deposition of Julia Medeiros, p. 41). Julia Medeiros further testified that Getchell never discussed the issue of the Ford CT Page 12842 Mustang's nitrous oxide injector with her, and that she had no reason to believe Getchell would operate an automobile containing a nitrous oxide injector. (Exhibit C, Deposition of Julia Medeiros, p. 41). Getchell testified that the nitrous oxide system was already in the Ford Mustang when he bought it, and that he did not install the system. (Exhibit D, Deposition of Christopher Getchell, p. 19). Getchell did not think that Julia Medeiros knew that the Ford Mustang contained a nitrous oxide injector, and he never discussed the use of nitrous oxide in an automobile with her, since he himself was more concerned with removing the nitrous oxide converter from the automobile and returning the automobile to its factory specifications. (Exhibit D, Deposition of Christopher Getchell, pp. 29-30).
The plaintiff has failed to submit evidence indicating that Julia Medeiros knew or should have known that Getchell's personal automobile had a nitrous oxide injector and that Getchell was thereby likely to drive at excessive rates of speed on his personal time. Therefore, the facts indicate that the defendants did not have the requisite knowledge to support the allegation that they were reckless in allowing Getchell to operate his automobile, when that automobile contained a nitrous oxide injector. Without knowing that the automobile contained a nitrous oxide injector, or the knowledge that Getchell had an interest in installing such a system in his automobile, the defendants cannot be held liable under a theory of recklessness even if the plaintiff can prove that the system was operational and that Getchell's use of the system caused the accident or its resulting damages.[5] Accordingly, the defendants' motion for summary judgment as to count four granted.
In summary, the defendants' motion for summary judgment as to count two is denied on the ground that genuine issues of material fact exist as to whether the defendants may be liable under § 14-60. Because the court will not grant a motion for summary judgment as to portions of a count, the motion for summary judgment as to the paragraphs in count two alleging vicarious liability, negligent supervision and negligent hiring is also denied. The defendants' motion for summary judgment as to count three is granted on the ground that Getchell was not acting in the scope of his employment at the time of the accident, and therefore the defendants cannot be held vicariously liable for his actions. Finally, the defendants' motion for summary judgment as to count four is granted, as the plaintiff has failed to submit evidence raising a question of fact as to whether the CT Page 12843 defendants had knowledge or reason to believe that Getchell's automobile contained a nitrous oxide injector or that Getchell would use such a system to drive at excessive speeds.
MELVILLE, J.