[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This matter is before the court on a stipulation of the parties to try the defendant's second special defense to the court for a ruling before the trial of the plaintiff's case. The plaintiff's complaint is for injuries and damages claimed to have been sustained as a result of an injury at premises owned by Woodbury Realty Company [Woodbury]. The defendant Woodbury's second special defense claims that the plaintiff was an employee of Woodbury, and that he was in the course of his employment at the time of the injury and therefore his only remedies available to him are those found in the Workers' Compensation Act, as I amended. The special defense imposes the burden of proof on Woodbury. The standard is on fair preponderance of the evidence. The court finds the following facts:
The plaintiff, Donald Michaud, was injured on June 20, 1995. He was working at property owned by Woodbury Realty Company performing maintenance and repair work to premises on the property.
The pivotal question for the court in this matter is who was Mr. Michaud's employer on the date of his injury.
The plaintiff, Donald Michaud, brought this tort action on May 27, 1997, against the defendant, Woodbury Realty Company, for injuries he allegedly sustained on June 20, 1995. The plaintiff alleges in his amended complaint, filed on July 31, 1997, that at the time of the accident, he was an employee of Carabetta Management Company [Carabetta].[1] According to trial testimony, Carabetta is a parent corporation which owns other corporations. Meadoway Apartments and Woodbury Realty Company are limited partnerships which own real estate and are separate legal entities from Carabetta Management. Carabetta provides property management services for each of the limited partnerships. Each limited partnership paid wages to the employees who worked on their properties.
Mr. Michaud initially sought the employment he had on the date of his injury when he went to premises at 200 Pratt Street in Meriden with a representative from the Department of Rehabilitation Services to apply for a job with Carabetta. Mr. Michaud was not clear the name of his employer other than Carabetta, either at the time of his job CT Page 2554-c application, the time he was hired, or indeed the time he was injured. Joey Carabetta, Jr. took him in a room with Charles Symanczyk, whose name Michaud recalled as Ralph, where Michaud viewed a display of properties; Carabetta told him that they owned all the properties shown. Carabetta or Symanczyk told Michaud that he could work at any of them because they owned them all.
After the job application, Michaud was hired. On his first day of work he reported to the Carabetta building at 200 Pratt Street and reported to Joey Carabetta and Charles [Symanczyk]. Michaud immediately went to work at the Meadoway and Rose Gardens properties. He was paid with two pay checks, one from each property's account. He was told that he was paid this way because Carabetta wanted to know where they were spending their money. He started his work in the beginning of May, 1995; he understood that he was "working at property owned by Carabetta. Initially, he was hired at the rate of pay of $6.00 per hour to perform grounds work. Michaud was told that if his work was good or if he was promoted to maintenance he would get a pay raise. That occurred, he was promoted to maintenance and received a $1.00 per hour raise, prior to the accident. None of his paychecks came from a Carabetta account.
On June 19, 1995, the plaintiff initially reported to Meadoway and was instructed by the manager at that location to report to Woodbury for the next couple of days. He was shown the way to Woodbury by a Carabetta representative. On June 20, 1995, the plaintiff was performing maintenance and grounds work at the defendant's premises. The plaintiff alleges that he was injured when the motor vehicle he was operating dropped into a ravine on property owned by the defendant.
Prior to filing this tort action, the plaintiff filed a worker's compensation claim against the defendant. The defendant paid worker's compensation benefits to the plaintiff in the amount of $189.68 per week for 120 weeks.[2] On or about June 8, 2000, the parties signed a stipulation for full and final settlement in the amount of $175,000. Paragraph one of the stipulation indicates that the plaintiff's injury "aros[e] out of and in the course of his employment with Woodbury Realty."
A hearing was held on this matter October 10, 2001, to determine whether the plaintiff's tort action is barred by the Workers' Compensation Act. Thereafter, the parties filed post trial briefs. In his brief, the plaintiff argues that his tort action against the defendant is not barred because the defendant was not his employer on the date of the alleged accident. The plaintiff argues that his employer was Carabetta. CT Page 2554-d
The defendant argues that the defendant was the plaintiff's employer on the date of the alleged accident. In the alternative, the defendant also argues that if it was not the plaintiff's employer, the plaintiff's action is still barred under the Workers' Compensation Act because the defendant was the plaintiff's principal employer on the date of the alleged accident.
General Statutes § 331-284(a), known as the exclusivity provision of the Workers' Compensation Act, provides in relevant part that "[a]n employer . . . shall not be liable for any action for damages on account of personal injury sustained by an employee arising out of and in the course of his employment. . . ." The Supreme Court has "consistently . . . interpreted the exclusivity provision of the act . . . as a total bar to common law actions brought by employees against employers for job related injuries with one narrow exception. . . ."[3] Suarez v.Dickmont Plastics Corp., 229 Conn. 99, 106, 639 A.2d 507 (1994).
"[T]he act was intended to be and is the exclusive remedy available where it appears that the necessary employer-employee relationship exists and the injury-producing transaction arises out of and in the course of that employment. . . ." (Citation omitted; emphasis added.) Castro v.Viera, 207 Conn. 420, 426, 541 A.2d 1216 (1988).
The defendant argues first that it was the plaintiff's employer on the date of the accident. The evidence submitted by the defendant shows that a W2 issued to the plaintiff lists the defendant as the employer. In addition, the employee's first report of injury and the agreement as to workers' compensation name the defendant as the plaintiff's employer. Paragraph one of the stipulation for full and final settlement indicates that the plaintiff was injured while in the course of his employment with the defendant. Finally, the policy face sheet and the information page of the defendant's workers' compensation liability policy list the defendant as the insured.
The plaintiff argues in opposition that he was not an employee of the defendant on the date of the accident; instead, he was an employee of Carabetta Management Company.
The evidence submitted by the plaintiff shows that the plaintiff completed various employment forms with Carabetta. The plaintiff completed an election form for health benefits and signed a job description form. In addition, the plaintiff completed a form to be kept in Carabetta's personnel file. Also, Carabetta issued an employee CT Page 2554-e identification badge for the plaintiff. Further, the plaintiff was directed to work at the defendant's site by his employer, Carabetta, on the date of the accident. Therefore, the plaintiff argues that Carabetta was his employer under the right to control test. Carabetta Management Company was described as the general partner of the defendant entity, as well as the entities that own the other properties at which the plaintiff worked. They are limited partnerships. As general partner of the defendant, Carabetta Management Company has inter alia, management powers (General Statutes § 34-17). Therefore, the actions of Carabetta, or its employees, are consistent with this conduct. Further, the plaintiff acknowledges in his memorandum of law "uncontroverted evidence introduced by the [d]efendant proving" that (1) he was working at the defendant's site when he was injured; (2) he was paid by the defendant for the work performed; (3) he was paid workers' compensation benefits by the defendant and the checks he received identified the defendant as the plaintiff's employer; and (4) he signed a voluntary stipulation, assisted by counsel of his own, that acknowledged the defendant to be his employer for purposes of workers' compensation benefits.
Connecticut courts apply the right to control test to determine if a party is an "employee or an independent contractor. "One is an employee of another when he renders a service for the other and when what he agrees to do, or is directed to do, is subject to the will of the other in the mode and manner in which the service is to be done and in the means to be employed in its accomplishment as well as in the result to be attained. . . ." (Citation omitted; internal quotation marks omitted.)Hanson v. Transportation General, Inc., 45 Conn. App. 441,444, 696 A.2d 1026 (1997), aff'd, 245 Conn. 613,716 A.2d 857 (1998). "It is not the fact of actual interference with the control, but the right to interfere. . . ." (Citation omitted; internal quotation marks omitted.) Doe v. YaleUniversity, 252 Conn. 641, 681, 748 A.2d 834 (2000).
The relevant facts are not disputed in the present case. First, the plaintiff was subject to the defendant's control. The building manager at Woodbury gave the plaintiff instructions and checked the plaintiff's work. The building manager at Woodbury told the plaintiff when he could take breaks and go to lunch and that the plaintiff also reported to the building manager at the end of the workday. Furthermore, the building manager understood that the plaintiff worked for him. Therefore, under the right to control test, the plaintiff was the defendant's employee on the date of the alleged accident. The plaintiff was paid by the defendant for the work performed at Woodbury. The plaintiff received workers' compensation benefits from the defendant and the plaintiff executed a CT Page 2554-f final settlement agreement with the workers' compensation commission acknowledging the defendant as the "responsible employer."
The defendant also argues that the plaintiff is estopped from claiming in this forum that he was not employed by the defendant on the date of the accident because he executed the final settlement agreement acknowledging the defendant as his employer. Finally, the defendant argues, alternatively, that it is entitled to the principal employer defense, pursuant to General Statutes § 31-291, even if it were found not to be the plaintiff's employer.[4] The plaintiff has not addressed this argument. The court need not address these two arguments because there is no genuine issue of material fact that the defendant was the plaintiff's employer on the date of the accident.
The court concludes that the defendant was the plaintiff's employer on the date of the accident. The court finds that the defendant has met its burden of proving that it was the plaintiff's employer on the date of the alleged accident. Therefore, the plaintiff's tort action against the defendant is barred by the exclusivity provision of the Workers' Compensation Act.
By the Court,
Lynda B. Munro Judge of the Superior Court